IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WASHINGTON NATIONAL LIFE      )
INSURANCE COMPANY,            )
                             )
            Plaintiff,        )
                             )
       v.                     )        No. 05 C 2551
                             )
                             )        Judge Mark Filip
CALCASIEU PARISH              )
SCHOOL BOARD,                 )
                             )
            Defendant.        )

MEMORANDUM OPINION AND ORDER

Before the Court are motions of Defendant, Calcasieu Parish School Board, to dismiss

Plaintiff's Complaint for Declaratory Relief for lack of personal jurisdiction under Fed. R. Civ.

P. 12(b)(2) and for improper venue under Fed. R. Civ. P. 12(b)(3). (D.E. 13 at 1.)[1]

Alternatively, Defendant moves to transfer venue to the Western District of Louisiana pursuant to

28 U.S.C. § 1404(a). (*Id.*) For the reasons stated below, the Court grants Defendants' motion to

transfer venue to the Western District of Louisiana.

BACKGROUND

Plaintiff, Washington National Life Insurance Company ("Washington National" or

"Plaintiff"), is a corporation organized under the laws of the State of Illinois. (D.E. 1,

Complaint, Intro.)  Defendant, Calcasieu Parish School Board ("Calcasieu" or "Defendant"),

provides educational services for children in the state of Louisiana, with its principal place of

business in Lake Charles, Louisiana. (*Id.* ¶ 1.)

---

[1] "D.E." refers to the docket entry of the cited document, followed by the appropriate page or paragraph number.

Plaintiff's action for declaratory relief arises from two related agreements between the parties. The first agreement is a group insurance policy Washington National sold to Calcasieu that was to provide health insurance coverage to Calcasieu's employees beginning on August 1, 1991. (*Id.* ¶ 5; *id.*, Ex. 1 ("Group Policy").) The second agreement is a "Minimum Premium Agreement," with an initial effective date of February 1, 1998. (*Id.* ¶ 6; *id.*, Ex. 2 ("MPA").)

In the Group Policy, which replaced a series of prior policies dating back to perhaps as far as the late 1970s, Washington National agreed to provide health insurance for Calcasieu's employees in exchange for Calcasieu's payment of insurance premiums. (*Id.* ¶ 5; *id.*, Ex. 1; D.E. 13 at 2, 3.) By its terms, Louisiana law applies to the Group Policy. (D.E. 1, Ex. 1.) The parties then entered into the Minimum Premium Agreement to minimize the premiums Calcasieu was paying for health insurance coverage under the Group Policy and its predecessor(s). (D.E. 13, ¶ 6.) In the Minimum Premium Agreement, Calcasieu assumed Washington National's liability for certain benefit payments under the Group Policy in exchange for potentially reduced premiums. (D.E. 1, Ex. 2.)[2] The MPA provides that it "shall be construed in accordance with the laws of the State where the Group Policy was issued."[3] (D.E. 1, Ex. 2 at 11.) Plaintiff, the insurer seeking declaratory judgment, alleges that its obligation to provide coverage for any claim under these agreements was contingent on whether the "Group Policy's post termination liability limit provision applied at the time a claim was submitted under the Group Policy" in accordance

---

[2] Although the Minimum Premium Agreement has an effective date of February 1, 1988, which is prior to the effective date of the Group Policy, Appendix I to the Minimum Premium Agreement, effective May 1, 1992, lists the Group Policy as the coverage for which Calcasieu is assuming liability under the Minimum Premium Agreement. Appendix I to Minimum Premium Agreement, effective May 1, 1993, does the same. (D.E. 1, Ex. 2 at 12; *id.*, Ex. 3).

[3] The Court's examination of the Group Policy and MPA reveals that neither contains a forum selection clause requiring suit to be brought in any particular forum. (D.E. 1, Ex.1; *id.*, Ex. 2.)

2

with the MPA. (D.E. 1 ¶ 7.) However, the parties disagree over the proper interpretation of the MPA.

Subsequent to the parties' execution of the Group Policy and MPA, both parties were named as defendants in a suit by former Calcasieu employee Wiley Stewart ("Stewart"). The suit is styled *Wiley Stewart v. Calcasieu Parish School Board, et al.*, No. 93-5922, and it is currently pending in the 14th Judicial District Court, Parish of Calcasieu, in the State of Louisiana. (D.E. 1 ¶ 12; *id.*, Ex. 4.) In the lawsuit, Stewart asserted claims arising out of the alleged wrongful cancellation or termination of his insurance coverage under the Group Policy. Although a jury originally found that Stewart's coverage was rightfully terminated, the Louisiana Third Circuit Court of Appeals disagreed, entered judgment in Stewart's favor, and ordered a new trial on damages only. (D.E. 1 ¶¶ 13-14.) Calcasieu and Washington National then filed a motion for partial summary judgment as to the benefits owed to Stewart under the Group Policy. This motion was first denied by the trial court and then granted by the Louisiana Third Circuit Court of Appeals, setting the benefits due Stewart at $7,545.37. (D.E. 1 ¶¶ 15-16.) Plaintiff now alleges that the "only matters left to be adjudicated [in the Stewart matter] are whether Stewart is entitled to statutory penalties (which, if awarded, would be double the amount of benefits owed) and whether Stewart is entitled to attorneys fees. . . ." (D.E. 1 ¶ 17.) The insurance company, Washington National, asserts its belief that Calcasieu intends to seek indemnification for the benefits Calcasieu has been ordered to pay Stewart and the statutory penalties, if awarded, as well as for Calcasieu's own attorneys' fees and costs in defending the *Stewart* matter. (D.E. 1 ¶¶ 17-18.)

In Count I, styled "Contract Indemnity," Plaintiff, the insurance company, alleges that it

3

cannot be liable to Calcasieu for any amounts related the *Stewart* matter under either the Group Policy or the MPA. In support of this position, Plaintiff alleges, without further elaboration, that between May 1, 1992 and May 1, 1994, "the Group Policy's post termination liability limit was not applicable to the [Minimum Premium] Agreement," and therefore that "Calcasieu was liable for the payment of any benefit payments owed under the Group Policy for those years." (D.E. 1 ¶¶ 8-9.) Count I seeks a "ruling that Washington National is not liable to Calcasieu for any amounts based on any legal theory," and: (1) a ruling that "Calcasieu be precluded from seeking indemnity, contribution, subrogation, or any other form of recover [sic] against Washington National arising or relating in any manner to any judgment rendered" in the *Stewart* matter or any "attorneys' fees or costs incurred by Calcasieu" in defending that matter in the Louisiana courts; (2) Washington National's attorneys' fees and costs; and (3) "any such further relief that the Court may deem just." (D.E. 1 at 5.)

In Count II, styled "Common Law Indemnity," Plaintiff alleges that Calcasieu made the decision to terminate Stewart's coverage under the Group Plan independently. Therefore, Plaintiff alleges, any damages attributable to that termination result from Calcasieu's conduct alone. (D.E. 1 ¶¶ 22-26.) Count II seeks the same relief as Count I. (D.E. 1 at 6-7.)

Defendant Calcasieu, the Louisiana school district, moves to dismiss this suit under Fed. R. Civ. P. 12(b)(2), arguing that the Court lacks personal jurisdiction over it. In addition, Calcasieu moves to dismiss this suit under Fed. R. Civ. P. 12(b)(3), contending that the Northern District of Illinois is an improper venue. Alternatively, Calcasieu moves to transfer venue to the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a). The Court addresses these motions in turn.

4

DISCUSSION

I.    **Defendant's Motion to Dismiss for Lack of Personal Jurisdiction**

    A.    **Legal Standard**

Because Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(2), Plaintiff bears

the burden of establishing personal jurisdiction. *See Purdue Research Found. v. Sanofi-*

*Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Court must deny Defendants' motion to

dismiss if Plaintiff establishes a *prima facie* case of personal jurisdiction. *See id.* Allegations in

the Complaint must be taken as true unless controverted by Defendant's affidavits. *See, e.g.*,

*Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1190 (7th Cir. 1980). All conflicts in any

affidavits and depositions submitted by the parties must be resolved in Plaintiff's favor, *i.e.*, in

favor of asserting jurisdiction. *See, e.g., Purdue Research*, 338 F.3d at 782. However, as the

Plaintiff insurance company has submitted no affidavits, no such conflicts exist here.

Generally, there are three potential inquiries concerning personal jurisdiction that must be

considered: (1) state statutory law, (2) state constitutional law, and (3) federal constitutional law.

*See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In Illinois, however,

the personal jurisdiction statute reaches to the limits of the federal and Illinois constitutions,

collapsing the jurisdictional question into state and federal constitutional inquiries.[4] *See, e.g., id.*

(citing 735 ILCS § 5/2-209(c)). A federal district court sitting in diversity, as the Court does in

this matter, has personal jurisdiction over a defendant if a court of the state in which the federal

courts sits would have it. *See Purdue Research*, 338 F.3d at 779. Although the Illinois Supreme

---

[4] The Illinois long-arm statute states that an Illinois court "may . . . exercise jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS § 5/2-209(c).

5

Court has noted that the federal and Illinois Due Process Clauses are distinct, *see Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990), the parties have not cited authority suggesting any relevant differences that might affect this case, and the Court's research has not uncovered any. *Accord, e.g., RAR*, 107 F.3d at 1276. Moreover, as the Seventh Circuit has noted, Illinois courts have provided little concrete guidance, if any, about what differences exist between state and federal due process standards. *See, e.g., id.* at 1277 ("We are unaware of—and the parties have not cited—any Illinois case decided on state constitutional grounds that deals with this question."). Because federal courts are naturally "hesitant to venture unguided into Illinois state constitutional law," *id.*, precedent has foregone the opportunity to speculate about how Illinois law might address such questions. *Id.* Therefore, to the extent that the Court analyzes whether it could assert personal jurisdiction over Defendants, the analysis will proceed in relation to the federal Due Process Clause. *See id.* (citation omitted).

As an initial matter, it is by no means clear that the Court has personal jurisdiction over Calcasieu. Whether or not Plaintiff has established a *prima facie* case of personal jurisdiction over Defendant, the Court may grant a petition to transfer under 28 U.S.C. § 1404(a) or 1406(a) as appropriate. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing the case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."). A finding of personal jurisdiction over a defendant is not a prerequisite to transfer under 28 U.S.C. § 1406(a). *See id.; accord, e.g., Coté v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986). As described below, the Court finds transfer to the United States District Court for the Western District of Louisiana clearly appropriate. The issue of

6

personal jurisdiction therefore is of merely academic consequence and the Court will not needlessly opine about debatable constitutional issues when the resolution of the case—when analyzed in terms of the appropriate forum under a Section 1404(a)/1406(a) analysis—is clear.

**B.    General Personal Jurisdiction**

Personal jurisdiction can be found in either of two forms, general or specific. General personal jurisdiction over a defendant allows a defendant to be sued in the putative forum regardless of the subject matter of the litigation. *See Purdue Research*, 338 F.3d at 787. However, the constitutional requirement for general jurisdiction is "considerably more stringent" than that required for specific jurisdiction. *Id.* (internal citations and quotation marks omitted). A finding of general jurisdiction must be based on defendant's "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). These contacts must be "so extensive as to be tantamount to [defendant] being constructively present in the state." *See Purdue Research*, 338 F.3d at 787. Washington National has not argued in favor of this forum's general personal jurisdiction over the school district. Instead, as all of Plaintiff's arguments in favor of personal jurisdiction relate to either the Group Policy or MPA, and not to any other "continuous and systematic general business contacts" between Calcasieu and Illinois, the Court has no basis for a finding of general jurisdiction. *See id.*, 338 F.3d at 788 (holding that "a few visits" to the forum state were not sufficient for a finding of general personal jurisdiction).

**C.    Specific Personal Jurisdiction**

A court sitting in Illinois has specific personal jurisdiction over a non-resident defendant consistent with due process if two conditions are satisfied. First, the defendant must have

"minimum contacts" in Illinois in conjunction with which the defendant has purposely availed itself of "the privilege of conducting activities within [Illinois], thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotation marks and citation omitted). In this regard, the defendant itself, rather than the plaintiff or a third party, must create the contacts. *See, e.g., Purdue Research*, 338 F.3d at 780 (citing, *inter alia, Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "This requirement ensures that a defendant's amenability to jurisdiction is not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *Purdue Research*, 338 F.3d at 780 (citation omitted). Moreover, where a plaintiff asserts that this Court has specific personal jurisdiction over a nonresident defendant, the cause of action asserted by the plaintiff must "arise out of" or be "related to" the contacts that occurred in Illinois. *See, e.g., Hyatt v. Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (citation omitted).

Second, compelling the defendant to litigate in Illinois also must not offend "traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 113. In this regard, assertion of jurisdiction must be reasonable in light of the burden it would place on the defendant, the plaintiff's interest in obtaining relief, the interests of Illinois, the judicial system's interest in efficient resolution of controversies, and the "shared interest of the several States in furthering fundamental substantive social policies." *Id.*

Plaintiff attempts to satisfy its burden of demonstrating minimum contacts between Calcasieu and Illinois principally by arguing that Calcasieu contacted the forum in the following four ways: (1) by purchasing the Group Policy, which Plaintiff claims was "issued in Illinois by

an Illinois [c]ompany;" (2) by "performing" the Group Policy in Illinois, which Plaintiff alleges occurs when "premiums are received in Illinois and policy proceeds are paid from Illinois;" (3) by executing the MPA, which it claims is governed by Illinois law;[5] and (4) by travel to Illinois "arising from the relationship between the parties." (D.E. 21 at 3-4.)

Defendant argues that the Court cannot exercise specific personal jurisdiction over it because "[a]ll discussions and negotiations of terms preceding the 1985 health insurance policy and the 1985 minimum premium agreement and discussions of terms for subsequent replacement policies and agreements, including the [Group Policy] attached as Exhibit 1 to the Complaint, and the June 1, 1988 Minimum Premium Agreement, took place in Louisiana." (D.E. 13 at 4.) The Defendant school district further asserts, and Plaintiff does not deny, that a Washington National representative solicited the Louisiana school district concerning the Group Policy in Louisiana. (D.E. 13 at 4.) Moreover, the employees covered by the Group Policy were almost exclusively located in Louisiana and the health care services provided in accordance with the Group Policy were almost always provided in Louisiana. (*Id.*) The Group Policy itself also is governed by the law of Louisiana. (*Id.* at 2). Defendant does not dispute, however, that the Group Policy was issued in Illinois, that the MPA is governed by Illinois law, or that Defendant mailed premium payments to Illinois. Moreover, Defendant admits that its employees made at least two trips to Illinois in conjunction with the relationship between the parties. (D.E. 13 at 4.)

1.     *It is Unclear Whether Defendant's Minimum Contacts with the Forum Could Support a Finding of Specific Personal Jurisdiction*

As an initial matter, precedent rejects the notion that an out-of-state party submits to the

---

[5] Although Defendant argues that the MPA may not have been executed by Washington National, it never argues that the MPA is invalid, or that it is not governed by Illinois law. (D.E. 22 at 2, n.1.)

jurisdiction of a particular forum simply by purchasing an insurance policy from or contracting with a party located in that forum. *See Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 394 (7th Cir. 1994); *see also Sungard Data Sys., Inc. v. Central Parking Corp.*, 214 F. Supp. 2d 879, 881 (N.D. Ill. 2002) (holding that an out-of-state purchaser of business continuity services from an Illinois company did not subject itself to personal jurisdiction in Illinois where the business the out-of-state purchaser contracted to assist and protect was not in Illinois and the services the Illinois plaintiff provided from Illinois were too insignificant to establish minimum contacts). Calcasieu did not submit to jurisdiction in Illinois simply by purchasing the Group Policy or entering into the MPA. Nor is it dispositive that the contract was executed (at least potentially by the insurance company) in Illinois. *See, e.g., id.* ("The fact that the contract was executed in Illinois is not dispositive. Nor are . . . [plaintiff's] acts of drafting and signing the contract in Illinois relevant; the unilateral acts of the plaintiff in the forum state do not establish the necessary minimum contacts required for specific jurisdiction.") (internal citations and quotation marks omitted); *Mac Funding Corp. v. Northeast Impressions, Inc.*, 215 F. Supp. 2d 978, 981 (N.D. Ill. 2002) (citation omitted).[6] Similarly, a nonresident party does not subject itself to jurisdiction in a particular forum merely by mailing payments to that forum. *See Federated Rural Elec. Ins. Corp.*, 18 F.3d at 395 (collecting cases); *Sungard Data*, 214 F. Supp.

---

[6] The Defendant school district contends that the original insurance contract was signed by both parties in Louisiana. (D.E. 13 at 3.) The insurance company contends (in an unsworn assertion in its brief that is not contained in the Complaint) that the original contract and the Minimum Premium Agreement were signed on behalf of the Plaintiff in Illinois. (D.E. 21 at 5.) Given that the balance of relevant considerations points clearly towards transfer to Louisiana, this Court need not further analyze whether the insurance company signed either document in Louisiana or Illinois. Similarly, the school district correctly asserts that the insurance company failed to support its assertion that the Minimum Premium Agreement was signed by the insurance company in Illinois. (The Complaint is silent as to this issue, and the copy of the Minimum Premium Agreement attached to the Complaint is unsigned (*see* D.E. 1, page 71 of 79 in electronic filing).) Again, given the Court disposition on venue transfer grounds, this issue is not material in bottom-line terms.

2d at 881. Therefore, Calcasieu's payments to Washington National in Illinois do not by themselves sustain a finding of personal jurisdiction in this matter.

Rather, for a contract, insurance or otherwise, to provide the basis for personal jurisdiction, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *RAR, Inc.* 107 F.3d at 1277 (internal citation and quotation marks omitted). While it is undisputed that the parties' dealings prior to the execution of the Group Policy and MPA occurred almost entirely in Louisiana (D.E. 13 at 4), it is unclear whether the parties' "course of dealing" under these agreements resulted in some contact between Calcasieu and Illinois. (*Id.*)

In arguing against a finding of personal jurisdiction, Plaintiff relies heavily on *Golden Rule Ins. Co. v. Michely*, 555 N.E.2d 1047 (Ill. App. Ct. 1990). The nonresident defendant in *Golden Rule* purchased an insurance policy from an Illinois insurer through a nonresident broker. *Id.* In granting the declaratory judgment defendant's motion to dismiss for lack of personal jurisdiction, the court highlighted the fact that the declaratory judgment defendant did not "at any time come into the state on matters regarding his insurance with [plaintiff]." *Id.* at 1052. In contrast to the *Golden Rule* defendant, Calcasieu may have come into Illinois in connection with its insurance, although the reason for the travel is unclear. More specifically, Defendant admits that in one instance, a then-Calcasieu employee, Nancy Sylvester, traveled to Illinois to "discuss the imposition of an additional premium charge by Washington National." (*Id.*) In another, Calcasieu employees came to Illinois to "participate in a demonstration of claim handling

11

software" that Trustmark wanted to sell Calcasieu.[7] (*Id.*) Calcasieu employee Ron Hayes made a trip "to visit [Trustmark's] home office in Illinois." (D.E. 13 ¶ 6.) Defendant asserts that these visits to Illinois arose "from the relationship between the Parties" (D.E. 21 at 3), but does not explain how they "arise out of" or are "related to" the contracts at issue here.

"In a breach of contract case, it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to minimum contacts analysis." *RAR, Inc.* 107 F.3d at 1278 (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996)) (emphases omitted). Nancy Sylvester's visit to Illinois to discuss the additional premium charge could indicate purposeful availment of the benefit of the laws of Illinois, if this additional premium charge related to the Group Policy. *See Purdue Research*, 338 F.3d at 785 (emphasizing the fact that defendant's employees "actually made several visits," on "a semi-regular basis" to forum state in connection with a contract between the parties as a basis for a finding of specific personal jurisdiction over defendant). Without knowing more about whether these contacts relate to the agreements at issue here and/or other agreements or proposed agreements between the parties, it is difficult to determine whether they are the type of "minimum contacts" with the forum that could support a finding of specific personal jurisdiction. Because Plaintiff has the burden, and has not adequately explained the purpose of the visits, and particularly whether they related to the "course of conduct" under the contracts at issue here, the Court concludes that the employee travel, standing alone, cannot form the basis for a finding of

---

[7] Although Trustmark Insurance Company is not a party to this case, the affidavit of Ron Hayes (D.E. 14) submitted to the Court states that "in 1996 the Calcasieu Parish School Board received notice that Trustmark Insurance Company had assumed the health insurance policy issued by Washington National Insurance Company to the Calcasieu Parish School Board. . . ." (*Id.* at 2.)

specific personal jurisdiction.

Next, Plaintiff argues that the MPA's choice-of-law clause supports a finding of personal jurisdiction over Calcasieu in this matter. Although Defendant fails to elaborate on this argument, it would seem that Defendant is arguing that Calcasieu "purposely availed" itself of the benefit of Illinois' laws by choosing Illinois law to govern the MPA. As noted above, the MPA specifies that it "shall be construed in accordance with the laws of the State where the Group Policy is issued." (D.E. 1, Ex. 2 at 11.) Plaintiff contends that the Group Policy was "issued" in Illinois and, therefore, that the MPA is governed by Illinois law. (D.E. 21 at 3). Rather surprisingly, Defendant does not disagree.[8] Even accepting Plaintiff's assertion that the MPA is governed by Illinois law, this fact alone does not support a finding of personal jurisdiction. *See, e.g., Sungard*, 214 F. Supp. 2d at 882 (refusing to assert personal jurisdiction over a non-resident defendant who had never traveled to Illinois in connection with a contract between the parties, even though defendant sent payments to Illinois and contract contained an Illinois choice-of-law provision). However, the MPA's choice-of-law clause, combined with Defendant's admitted trips to Illinois, strengthens Plaintiff's argument that Defendant has, all things considered, purposefully availed itself of the benefits of Illinois law sufficiently to satisfy due process. *See Purdue Research,* 338 F.23d at 786 (holding that "a choice of law provision may be some indication that a defendant has purposefully availed itself of the laws of a particular

---

[8] The term "issued" in the insurance context can mean either the time when the insurance company signs the contract, or the time when the insured receives the contract. *See* 44 C.J.S. "Insurance" § 307 ("the words 'issue,' 'issuance,' and 'issued,' in reference to an insurance policy, are used in different senses, sometimes as meaning the preparation and signing of the instrument by the officers of the company, as distinguished from its delivery to insured, and sometimes as meaning its delivery and acceptance whereby it comes into full effect and operation as a binding mutual agreement." (internal citations omitted)). Plaintiff fails to state the manner in which it uses the term, and neither the Group Policy nor the MPA defines the term.

jurisdiction"). Since the Court need not come to a conclusion on this issue, as discussed below, it suffices to say that the issue of whether Defendant purposely availed itself of Illinois' laws is a debatable question, and one that need not be definitively resolved here.

2. *A Finding of Personal Jurisdiction is Not a Prerequisite to Transfer of this Matter*

Even if Plaintiff had adequately demonstrated specific personal jurisdiction in this matter, it would be of no practical consequence on the facts presented. The Court's resolution of Defendant's motion for a transfer of venue requires neither a finding of personal jurisdiction nor proper venue. *See, e.g., Goldlawr*, 369 U.S. at 466; *Coté*, 796 F.2d at 985. The Court therefore reserves final judgment on the personal jurisdiction question, as such a finding is not a prerequisite to the transfer of venue. Instead, the Court proceeds to the discussion of Defendant's transfer venue motion, because the propriety of a venue transfer is clearcut, regardless of the disposition of the threshold personal jurisdiction issue.[9]

## II. Defendant's Motion for Transfer of Venue

As an alternative to its motions for dismissal, Defendant has moved for transfer under 28 U.S.C. § 1404(a). (D.E. 13 at 1.) While the parties dispute whether venue is proper here in Illinois, again the Court need not resolve this dispute in order to decide Defendant's motion to transfer the matter to the Western District of Louisiana because Plaintiff does not dispute that venue would be proper there. *See Allied Van Lines, Inc. v. Gulf Shores Moving & Storage, Inc.*,

---

[9] The insurance company half-heartedly suggests that a Louisiana law, La. Rev. Stat. 13:5106(A), may be unconstitutional to the extent that it would require this suit to be filed in Louisiana. *See* D.E. 21 at 6 (insurance company stating that "the constitutionality of this law seems suspect"). The Court declines any putative invitation to speculate about the constitutionality *vel non* of a statute of the State of Louisiana. Moreover, the Court's disposition of the case on more limited venue transfer grounds obviates the need for any such commentary about the constitutionality of the Louisiana statute.

No. 04 C 6900, 2005 WL 418032, at *4 (N.D. Ill. Feb. 23, 2005).

There are two statutory bases for transfer of venue: 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). If venue is proper here, 28 U.S.C. § 1404(a) permits transfer in an appropriate case; if venue is improper here, 28 U.S.C. § 1406(a) permits transfer in any event. *See Allied Van Lines*, 2005 WL 418032, at *4. Under § 1404(a), a court may transfer suit "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought; § 1406(a) also permits transfer "in the interest of justice" to a district where venue and personal jurisdiction properly lies. *Id.* The same general factors and considerations govern transfer under these complimentary provisions. *See Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 530 (7th Cir. 2002). The decision whether to transfer a case on venue grounds is "largely a discretionary determination," with the assessment made on the facts and circumstances of the case presented. *Von Holdt v. Husky Injecting Molding Sys. Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995) (collecting cases, including *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)).

While the Court recognizes that in some cases it may be important to decide venue issues prior to making a transfer determination, such is not the case here. It is true that the standard for waiver of the venue issue differs between the two sections. Under section 1404 the substantive law of the transferor court applies in the transferee court when transfer occurs. *See Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1057 (N.D. Ill. 2002) (granting motion to transfer without deciding venue or jurisdictional issues). In addition, if venue is improper and the Court declines to transfer under section 1406, then the Court must dismiss the action. *Id.* In this case, like *Spherion*, these distinctions are of little concern. *See id.*; *see also Lasalle Nat'l Bank v.*

*Arroyo Office Plaza, Ltd.*, No. 87-C-463, 1988 WL 23824, *5 (N.D. Ill. Mar. 9, 1988) (declining to decide propriety of venue because court would transfer under either section 1404(a) or section 1406(a)).

First, waiver is not implicated here because the school district raised objections to venue in its earliest substantive filing. (D.E. 12.) Second, the contracts at issue expressly provide that the substantive law of Louisiana and/or the state where the Group Policy was issued will govern wherever contractual disputes may be heard. *See id.* Third, because the court finds that transfer is appropriate, the consequences of non-transfer are unimportant. The only remaining question is whether transfer is convenient for the parties and serves the interest of justice under Section 1404(a) or 1406(a). *See Wild*, 292 F.3d at 530. As explained below, the Court finds that transfer is clearly warranted.

## A.  Legal Standard for Transfer of Venue

To prevail on a motion for transfer pursuant to § 1406(a) or § 1404(a), the party seeking transfer must establish that "the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219-20; *Wild*, 292 F.3d at 530 (stating that § 1406(a) and § 1404(a) are complimentary and both permit transfer for convenience of parties). When evaluating the convenience of the parties and witnesses—a factor that is sometimes referred to as the private interests at stake—a district court considers: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties. *See, e.g., Coleman v. Bucheit, Inc.*, No. 03 C 7495, 2004 WL 609369, at *1 (N.D. Ill. Mar. 22, 2004) (citing *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 902) (N.D. Ill. 2001)). In examining the interest of justice, or what are sometimes referred to as the public interest factors,

the court focuses on the efficient administration of the court system. Considerations include "the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *Morris v. Am. Bioscience, Inc.*, No. 03 C 7525, 2004 WL 2496496, at *2 (N.D. Ill. Nov. 3, 2004) (citing *Von Holdt*, 887 F. Supp. at 188). The balancing of these factors is committed to the sound discretion of the trial judge. *See, e.g., Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 608 (7th Cir. 2003) (collecting cases). The party seeking to transfer venue "'has the burden of establishing, by reference to particular circumstances, that the transfer forum is clearly more convenient' than the transferor court." *Technical Concepts, L.P. v. Zurn Indus., Inc.*, No. 02 C 5150, 2002 WL 31433408, at *2 (N.D. Ill. Oct. 31, 2002) (quoting *Coffey*, 796 F.2d at 219-220).

## B.    Private Interest Factors

### 1.    *Plaintiff's Choice of Forum*

Plaintiff chose to bring its suit in the Northern District of Illinois, and generally, the plaintiff's choice of forum carries substantial weight, particularly where, as here, it is plaintiff's home forum. *See Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997). The significance of plaintiff's choice, however, is materially diminished when "no significant connection to the chosen forum exists." *Heston v. Equifax Credit Info. Serv.*, 03 C 2476, 2003 WL 22243986, at *1 (N.D. Ill. Sept. 26, 2003) (citation omitted); *accord, e.g., Binz v. Iowa Interstate R.R., Ltd.*, No. 98 C 6381, 1999 WL 90642, at *1 (N.D. Ill. Feb.10, 1999) (stating that the choice of forum "has minimal value" under such circumstances) (internal quotation marks and citations omitted). In addition, when the plaintiff in a case involving a venue transfer motion is, as here, a declaratory judgment plaintiff, the initial choice of forum is entitled to diminished

weight. *See, e.g., Coco*, 302 F.3d at 718. As the Seventh Circuit has explained, "but for . . . [the declaratory judgment plaintiff's] preemptive filing in Illinois, this would be in all respects . . . [the declaratory judgment defendant's] suit, and he would have been entitled to file whenever he wanted, wherever he wanted." *Id.* Thus, the forum choice of the declaratory judgment Plaintiff here is entitled to some weight, but less than it might otherwise have garnered; this conclusion is reinforced by the fact that, as explained immediately below, the lion's share of (if not all) material events occurred in Louisiana.

> 2.    *Situs of Material Events*

In support of its argument against transfer of venue, Plaintiff identifies three "events" connecting this litigation and the Northern District of Illinois: (1) Washington National is based in Illinois, (2) the Group Policy was signed "for the Company in Evanston, Illinois" and (3) the MPA and Appendix also were executed "by Plaintiff in Evanston, Illinois."[10] (D.E. 21 at 8.) These allegations do little to indicate that Illinois was the situs of events material to this litigation, particularly where the parties do not disagree that the *Stewart* case and all matters relating to it occurred in Louisiana. Moreover, it was Plaintiff's representative in Louisiana who first made contact with Defendant in that state concerning insurance, precipitating the contractual relationships at issue here. Negotiations over the Group Policy and MPA took place between Plaintiff and a Louisiana representative of Defendant in Louisiana. In addition, affiant Ron Hayes, Risk Manager of the Calcasieu Parish School Board, avers without contradiction that: (1) "nearly all of the employees of the Calcasieu Parish School Board, when first enrolled in the

---

[10] As previously indicated (*see* Note 6, *supra*) the record is, at best from Plaintiff's perspective, murky about whether the MPA was signed in Illinois for the insurance company. The copy of the MPA attached to Plaintiff's Complaint is unsigned, and the subject of place of signing is not addressed by the averments of the Complaint.

health insurance program, resided in Louisiana;" (2) "the majority of medical treatment covered by [the Group Policy] occurred in the State of Louisiana"; and (3) most of his contacts with Plaintiff regarding the Group Policy were with W. Allen Saba, whose offices are located in Louisiana. (D.E. 14 at 2.) These considerations weigh heavily in favor of Louisiana as the situs of material events in this matter.

In addition, caselaw teaches that in an insurance coverage case, where the insured resides in the proposed transferee district and the underlying litigation occurred in that same district, "the situs of material events as they relate to the underlying litigation, which, in turn, lead to this litigation" occurred in the proposed transferee district. *See Westchester Fire Ins. Co. v. Carolina Cas. Ins. Co.*, No. 03 C 4137, 2004 WL 170325, at *2 (N.D. Ill. Jan. 15, 2004) (granting defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a)). This is particularly true here, as there is no dispute that the policy was sold for the benefit of a Louisiana resident entity and its employees and "virtually all of the critical negotiations regarding the sale of the policy" took place in Louisiana. *Conseco Life Ins. Co. v. Reliance Ins. Co.*, No. 99 C 5020, 2001 WL 1631873, at *5 (N.D. Ill. Dec. 14, 2001) (granting motion to transfer venue to Texas where the policy was sold, in part, for the benefit of two Texas corporations, the insurance representatives that negotiated the transaction were Texas residents, and no one went to Illinois to negotiate the policy at issue).

On the issue of situs of material events, the Court finds that Defendants have shown that many material events occurred in Louisiana, and that at most very few occurred in Illinois. Therefore, this factor weighs in favor of transfer.

### 3. Ease of Access to Sources of Proof

Defendant alleges that "the overwhelming body of evidence is sited in Louisiana." (D.E

12 at 8.) Plaintiff disagrees and states that "the only 'sources of proof' necessary in this case are the contract(s), which are attached to the Complaint." (D.E. 21 at 8.) However, as neither party has argued that relevant documents and records may not be readily transferred, the Court does not put substantial weight on this factor. *Accord, e.g., Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill.1998); *Von Holdt*, 887 F. Supp. at 190.

### 4. Convenience of Witnesses

"The convenience of witnesses is often viewed as the most important factor in the transfer balance." *Hanley*, 6 F. Supp. 2d at 775 (citation omitted). Furthermore, the convenience of non-party witnesses is "substantially more important than the convenience of party witnesses because the latter are within the party's control." *First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.*, No. 04 C 2728, 2004 WL 1921059, at *4 (N.D. Ill. Jul. 21, 2004); *accord, e.g., S.C. Johnson & Son v. Buzz Off Insect Shield*, No. 05 C 1046, 2005 WL 1838512, at *3 (N.D. Ill. Jul. 28, 2005).

In the instant case, Defendant has specified four party witnesses residing in Louisiana and has described the relevance of their testimony. (D.E. 13 at 6). Defendant also states that it will be relying on testimony from: (1) a former employee residing in Louisiana regarding the "payment of premiums, coverages, renewal of policies and coverages [and the] post termination liability limit"; (2) Charles V. Musso, Jr. an attorney practicing in Louisiana regarding the underlying litigation; (3) an insurance agent licensed in Louisiana regarding "contact with the Calcasieu Parish School Board, Washington National, and Trustmark on various health insurance policies. . ."; and (4) Allen Saba, an employee of Trustmark Insurance Company with an office in Louisiana regarding "insurance coverage, placement of insurance coverage, [and] representations made with respect to coverage and defense." (D.E. 13 at 6-7). Plaintiff claims that because "this case simply requires

20

the Court to adjudicate the rights and obligations of the parties under the applicable contract(s) . . . there is no need to rely on any extrinsic evidence" and "there are no witnesses necessary to resolve this matter." (D.E. 21 at 8.) Defendants reply that "parole or extrinsic evidence" will "most certainly be necessary to determine the rights of the parties." (D.E. 22 at 7.)

Based on the parties' submissions, the Court is unable to conclude that either the Group Policy or the MPA is unambiguous on its face. Thus, relevant (perhaps even key) evidence may be provided by the witnesses, including the non-party witnesses, whom Defendant identifies. *See Armco v. Reliance Nat'l Ins. Co.*, No. C-1-96-1149, 1997 WL 311474, at *6 (S.D. Ohio May 30, 1997) (rejecting unilateral claim, when considering a venue transfer motion, that an insurance policy was unambiguous on its face and finding that witness testimony as to its negotiation might be relevant). In addition, even assuming, *arguendo*, that the Group Policy and MPA are unambiguous, as Plaintiff contends, Plaintiffs' contention that "there are no witnesses necessary to resolve this matter" would still be misplaced. In its Complaint, Plaintiff seeks, *inter alia*, a declaration that Washington National is not liable to Calcasieu for any amounts based on any theory "arising out of or relating in any manner to any judgment rendered or for any attorney fees or costs incurred by Calcasieu" in the *Stewart* matter. (D.E. 1 at 5, 6.) In order to render such a coverage determination, the Court would likely need to consider not only the documents from which coverage might arise, in this case the Group Policy and MPA, but also the facts and circumstances relating to the claim for coverage. Some factual information about the *Stewart* matter, be it only testimony regarding its existence and parameters, could well be relevant to such a determination, and Plaintiff has provided no explanation as to how this information might be presented if not by witness testimony. Defendant identified Charles Musso, an attorney in

21

Louisiana, as having knowledge about the *Stewart* matter. In addition, and independently, if the insurance company is liable for at least some of the fees and costs associated with the defense of the *Stewart* case, virtually all relevant information concerning the extent of such liability will be located in Louisiana, in whose courts the underlying *Stewart* litigation has proceeded for years. No witnesses located in Illinois have been identified as being capable of testifying regarding the *Stewart* matter, or any other issues in this case.

Testifying in Louisiana would certainly be more convenient for both the identified party witness and non-party witnesses, as all identified witnesses live and/or work in that state. In addition, the non-party witnesses would likely be under the subpoena power of the court in the Western District of Louisiana, but likely not in the Northern District of Illinois. Therefore, the Court finds that considerations of convenience weigh in favor of transferring the present action to the Western District of Louisiana. *Accord, e.g., Friskit, Inc. v. Realnetworks, Inc.*, No. 03 C 4505, 2003 WL 22433106, at *3 (N.D. Ill. Oct. 24, 2003) (finding that transfer to the Northern District of California was favored by the fact that most of the witnesses were located in San Francisco or elsewhere on the West Coast).

### 5. Convenience to Parties

In analyzing the convenience of the parties, the Court considers the parties' respective residences and abilities to bear the expense of trial in each forum. *First Horizon Pharm. Corp.*, 2004 WL 1921059, at *4 (citation omitted). Neither Party makes any substantial argument as to why trial in Illinois or Louisiana would be more or less convenient for the parties.[11] Obviously,

---

[11] The Court notes that Defendant, a public school board, would appear less able to bear the expense of litigating in a distant forum than Plaintiff, a for-profit insurance company. This seems particularly true given the effects that the unforeseen expenses associated with Hurricane Katrina and its aftermath may have had on Louisiana school budgets.

litigating here would be more convenient for the declaratory judgment Plaintiff, an Illinois insurance company, and litigating in Louisiana would be more convenient for the declaratory judgment Defendant, a Louisiana school board. However, as discussed above, several potentially key party-witnesses for Defendant live in Louisiana—transferring this case would reduce the travel cost and loss of productivity associated with provision of testimony by those individuals. If Plaintiff were to decide to call witnesses, it seems likely that its witnesses also would reside in Louisiana, as Defendant does not deny Plaintiff's assertion that the Group Policy and MPA were solicited in and negotiated in Louisiana. The convenience of the parties factor therefore also weighs in favor of transfer.

### B.    Public Interest Factors

Courts look at the public interest as well as private interests when analyzing transfer questions. When courts analyze public interests concerning a putative transfer, they typically look at the relative speed of the litigation in the fora at issue, the relative competency of the fora to address disputed legal questions, and the desirability of resolving controversies in their home locale. *See, e.g., Morris,* 2004 WL 2496496, at *2 (citing *Von Holdt,* 887 F. Supp. at 188). In assessing these "interest of justice" factors, the analysis relates to the "efficient functioning of the courts . . . ." *Id.* at 4.

#### 1.    Speed That Case Will Proceed to Trial

The litigants have not discussed the issue of which forum which likely produce a quicker answer to their dispute, and therefore the issue fairly could be deemed waived. However, in the

---

As Defendant did not make such an argument, however, the Court is not fully informed about Defendant's particular financial circumstances and does not consider them.

23

interests of thoroughness (the public interest at play also is perhaps not best ignored as waived, simply because the parties have neglected to consider it), the Court has analyzed this issue as best it can without the benefit of adversarial briefing.

When evaluating which forum is likely to produce a quicker answer, courts often look at "(1) the median months from filing to disposition for civil cases and (2) the median months from filing to trial for civil cases." *Plotkin*, 168 F. Supp. 2d at 904 (citation omitted). The Judicial Caseload Profile of the U.S. District Courts shows that for the year ending September 30, 2005, the median time from filing to disposition was 12.4 months in the Western District of Louisiana, versus 6.9 months in the Northern District of Illinois.[12] In contrast, the median time from filing to trial in the same period was 20.7 months in the Western District of Louisiana, compared to 27.0 months in the Northern District of Illinois. As others have previously observed, the median disposition time statistic in the Northern District of Illinois historically has been somewhat skewed by the "significant percentage of this District's cases that consist of mortgage foreclosures, which are heard in significant numbers in few other districts, and nearly all of which resolve within 90 to 120 days of filing." *Allied Van Lines*, 2005 WL 418032 at *5; *see also id.* ("The average time from filing to trial is a much better gauge of the relative pace of cases in the two districts.").

This Court need not go so far as *Allied Van Lines'* suggestion that average time from filing to trial is the predominant measuring stick to be used, but *Allied Van Lines'* observations about the historical skewing effect of mortgage foreclosures on case resolution data of the Northern

---

[12] The Court relies on the Judicial Caseload Profile of the U.S. District Courts for this information, *available at* http://www.uscourts.gov/cgi-bin/cmsd2005.pl (last visited May 1, 2006).

District of Illinois is surely true. Thus, one could reasonably expect a quicker resolution in the Western District of Louisiana than in Chicago. Moreover, common sense suggests that the instant litigation will move more quickly in a venue close to the only witnesses identified, and where such witnesses are within the court's subpoena power. (*See* D.E. 13 at 6-7.) And, as was the case in *Allied Van Lines*, the median speed to trial is faster in the proposed transferee district. The Court finds that, on the facts of this case, this consideration under the interests of justice moderately favors transfer because the case is likely to proceed more quickly to resolution in the Western District of Louisiana, the proposed transferee forum.[13]

### 2. *Familiarity with the Applicable Law*

Precedent teaches that in a diversity action, it is advantageous for the trial judge to have some familiarity with the applicable state law. *See Coffey*, 796 F.2d at 221. The parties in this case agree that at least one contract at issue, the Group Policy, is governed by Louisiana law. (D.E. 21 at 2-3.) Defendant argues that "Louisiana courts are in a much better position to apply Louisiana law for insurance contract interpretation." (D.E. 12 at 9.) While Plaintiff offers no suggestion concerning which venue is more familiar with the applicable law, it does claim, as discussed above, that the MPA is governed by Illinois law. (D.E. 21 at 3.) Therefore, the laws of both fora may apply in this matter.

Although federal courts are often called upon to decide legal questions involving the laws of various states, and are certainly capable of doing so, the Court notes that Louisiana law is relatively unique among American jurisdictions because of its civil law origins; therefore an

---

[13] It is the Court's understanding, based on a phone call to the chambers of Chief Judge Richard T. Haik on April 19, 2006, that the Western District of Louisiana is operating on a "business as usual" basis now, notwithstanding the challenges posed for Louisiana by Hurricane Katrina, which hit in the Summer of 2005.

Illinois court might expend more resources to analyze such questions than would otherwise be the case or would be the case if a Louisiana court were called upon to analyze a legal question from one of the forty-nine common law tradition states. In addition, to the extent that the amount of liability concerning attorneys' fees and costs in the underlying *Stewart* litigation becomes germane, a Louisiana court would likely be better positioned to assess whether reasonable (as opposed to excessive, or ill-conceived) efforts were made in the Louisiana state courts in the *Stewart* case. Accordingly, the Court finds that this factor modestly favors transfer.

### 3.   *Desirability of Resolving Controversies in their Locale*

"Resolving litigated controversies in their locale is a desirable goal of the federal courts." *Doage v. Bd. of Regents*, 950 F. Supp. 258, 262 (N.D. Ill. 1997) (citation omitted).  This case arises from two insurance agreements solicited in Louisiana, negotiated in Louisiana, and issued to a Louisiana School Board. (D.E. 12 at 4.)  Moreover, Plaintiff seeks a declaration that it is not liable to Defendant based on any theory "arising out of or relating in any manner to any judgment rendered or for any attorney fees or costs incurred" in relation to an underlying action litigated in Louisiana. (D.E. 1 at 5-7.)  In contrast, the only meaningful connections between this controversy and Illinois are that it is Plaintiff's home state and therefore Illinois is where Plaintiff may have executed the documents at issue.[14] (D.E. 21 at 8.)  The Court concludes that although Illinois has an interest in resolving disputes involving its residents, Louisiana has a much stronger interest in the resolution of issues relating to the insurance of its school board employees, particularly where that insurance was solicited and negotiated within its boundaries.  This factor militates in favor of

---

[14] Although Plaintiff contends that it executed the MPA in Illinois, no representative of Plaintiff appears to have signed the document. (D.E. 1 at Ex. 2.)

transfer.[15]

## C.     Balancing of Interests

In conclusion, the Court finds that the private and public factors weigh decidedly in favor of transferring the present action to the Western District of Louisiana. Only the Plaintiffs' choice of forum weighs in favor of resolving this matter in the Northern District of Illinois, and that factor is entitled to diminished weight because Plaintiff is a declaratory judgment plaintiff suing on a case that has little to do with Illinois. The Western District of Louisiana serves the private interests at stake because it will be more convenient for the parties and witnesses. Furthermore, transfer will clearly serve the public interest in efficient, prompt, and locally-based adjudication.

---

[15] In addition, as caselaw reflects, where, as here, other factors weigh substantially in favor of transfer, there is an independent public interest in mooting what otherwise are debatable assessments of a constitutional magnitude under the Due Process Clause of the Fourteenth Amendment concerning the propriety of personal jurisdiction in the putative transferor forum. Although federal courts do not run from constitutional decisions, of course, judicial restraint counsels strongly against unnecessary decisions in this area which are, in essence, of academic consequence only, given the propriety of transfer within the statutory framework provided by Congress. *Accord, e.g., Spherion,* 183 F. Supp. at 1059 (collecting cases).

## CONCLUSION

For the foregoing reasons, Defendant's motion to transfer is granted and the Court orders the matter transferred to the Western District of Louisiana. (D.E. 13 at 1.)

So Ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated: _5·2·06_